IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| EARNEST WAYNE WILLIAMSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 97-G-2484-S |
| | ) | |
| NATIONAL ASSOCIATION OF | ) | |
| INDEPENDENT TRUCKERS, INC.; | ) | |
| PREFERRED ADMINISTRATIVE | ) | |
| SERVICES, INC.; LEGION | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTERED**
SEP 10 1998

## MEMORANDUM OPINION

This cause is before the court upon the motion of defendants for summary judgment. Pursuant to the court's scheduling order [Dkt. #7] the motion is ready for decision. The plaintiff has submitted nothing in opposition to the motion. This action arises out of a contract for insurance between the defendants and the plaintiff. While lifting a safe up a flight of stairs, the plaintiff allegedly suffered an injury, which he alleges is covered by that insurance contract. The plaintiff asserts three separate theories of recovery in three separate counts to his complaint.

## COUNT ONE

The plaintiff, in count one of his complaint, alleges that his policy of insurance with the defendants covers his alleged injuries. The policy in question provides for the payment of certain benefits for injuries sustained during the course of the insured's performance of his occupation.[1] Injury is defined by the policy to mean "accidental bodily injury to an insured person which: (3) arises solely out of or in the course of his regular occupation while on dispatch with the Contract Carrier as stated on his application." The coverages for temporary total disability and continuous total disability both provide that the disability must be the result of an "Injury," and as such incorporate the above definition. The coverage for medical and dental expenses is denominated by the heading: "Accident Medical & Dental Expense Benefit." That coverage provision provides as follows:

> If an Insured Person Incurs Covered Expenses resulting form [sic] Injury which occurs while insured under the Group Policy, We will pay the Reasonable and Customary amount of such Covered Expense incurred . . . within two years . . . of the date of the accident which caused the Injury . . . .

---

[1] The plaintiff also had a policy providing coverage for non-occupational injuries. That policy is not here at issue.

Therefore, that coverage is also defined with reference to the definition of "Injury" set out above. An additional definition was added to the policy by endorsement. It defines accident as follows: "Accident: A sudden, unplanned, unexpected, unforeseen and unintended event resulting in injury." The defendants argue that the event that caused the plaintiff's alleged injury was not the result of an "Accident" as that term is defined in the policy.[2]

To determine whether the policy provides coverage for the plaintiff's alleged injuries, it is necessary to examine the incident that allegedly gave rise to those injuries. The only evidence in the record regarding the incident is contained in the excerpts of the plaintiff's deposition submitted by the defendants. Those excerpts contain the following:

Q: Tell me how that accident happened.

A: It was the weirdest thing. I mean, you'd never dream it in a lifetime, but I was out loading my truck and just loading away, and we were right down until there was a thirteen-hundred-

---

[2] Although the defendants assume in their argument that this definition controls the coverage issue, the court notes that the only reference to "accident" in the provisions affording coverage is in the heading to the medical and dental expense benefit coverage and in references to the time during which covered expenses must be incurred under that coverage. The definition of "Injury," however, refers to "accidental bodily injury." Whether the definition of "accident" contained in the policy's endorsement should be read into "accidental" is an issue that, as will be seen, need not be decided at this juncture.

3

pound safe, and it set up about four feet and about three feet wide by three feet wide, eight inches thick, solid . . . . [End of page 66]

Pages 67-69 were not submitted by the defendants. Page 70 picks up as follows:

pushing, and we were tugging.

Well, we got--When I grabbed ahold of it and pulled it, it made its flip over that top step when it rolled back, and when it did, the guys had done let go on the bottom. It took me and went uh, and when it did, I mean, I had that thirteen hundred pounds for a megasecond, and it--I felt it come unjoined.

Q: So it jerked both of your arms, and both of your arms were still holding onto it?

A: Oh, it went like that. When it did, I was hanging out, and it was all I could do. I felt it snap.

Q: Where did you feel a snap at?

A: Right here (indicating).

Q: In the center of your chest?

A: The center of my chest, right up above your sternum about an inch.

Q: Did it feel like a bone pop?

A: I felt something. I didn't . . . . [End of page 70]

This is the entire evidence in the record regarding the incident that allegedly injured the plaintiff.

4

The defendants argue that the policy provisions exclude coverage. Their argument is as follows:

> At the time of the alleged injury, the Plaintiff was doing an activity that was a normal part of his job. As a driver contracted to Allied Van Lines, he was expected to assist in loading and unloading items form the truck. (Defendants' Ex. 1, p. 43) Since helping to move the safe was a normal activity of his occupation, his alleged injury during this activity cannot be said to be "a sudden, unplanned, unexpected, unforeseen and unintended event resulting in injury."

(Def.'s submission in support of Sum J., at 4.) Contrary to this assertion, it is clear that the event that allegedly resulted in plaintiff's injury might be found by a jury to have been "sudden, unplanned, unexpected, unforeseen and unintended." It appears from the plaintiff's description of the event that a sudden shifting or rolling of the safe was involved as it passed the top step. The event in question, therefore, might reasonably be found by a jury to have been "sudden, unplanned, unexpected, unforeseen and unintended."

The court also notes that even though moving a 1,300 pound safe might have been a normal and expected part of his job, the manner in which the safe allegedly injured the plaintiff might still be considered accidental. The interposition of an accidental intervening cause makes the incident an "accident" or "accidental" as far as the plaintiff is concerned. In this case the shifting of the

safe and the fact that those helping the plaintiff had let go constitutes such an accidental intervening cause. It is certainly not normal or expected that one person would be left bearing the weight of a 1,300 pound safe. Therefore, as to the plaintiff, the incident in question could clearly be found to be accidental or an accident, as that term is defined in the policy, by a reasonable jury. A hypothetical example might better illustrate the fallacy in defendants' argument. If someone in the plaintiff's position injured his back while lifting a heavy box, the injury might be found not to be "accidental." However, should the same individual, while carrying a heavy box, be injured when the moving van's unloading ramp collapsed, or when a flight of stairs he was ascending collapsed, it would appear clearly to be an accidental injury. In both cases the person would have been doing something that was a normal activity of his occupation, and yet the way in which his injury came about would be the determining factor. The defendants surely would not argue that plaintiff's injuries were not accidental, or were not the result of an accident as that term is defined in the policy, if a rope being used to hoist the safe broke and he was then injured by the falling safe.

It has been noted that an insured's voluntary actions can nonetheless lead to an accidental injury even when his actions would otherwise be considered normal.

> Accordingly, if the insured, in cranking an automobile engine, slips and falls and sustains injury as the direct result thereof, the happening is unforeseen and unintended and the injury is accidental.

Couch on Insurance 2d (Rev ed) § 41.24. And further:

> [A]n injury was deemed accidental, within the coverage of an "employers' special accident policy," where an employee's face and right eye were injured when, while loading a log, the limb of a tree which had caught on the harness of a team flew back and hit the employee . . . .

Id. These examples are not unlike the situation that is presented in the instant case. Both examples involve otherwise normal activities with unexpected results.

Therefore, a reasonable jury, based upon the evidence currently of record, could conclude that even though lifting the safe was a normal part of the plaintiff's job, his injuries were nonetheless caused by an event that was "sudden, unplanned, unexpected, unforeseen and unintended," and thus the result of an accident as that term is defined in the policy. Such a jury could also find that the plaintiff suffered an "accidental bodily injury" (which is how the policy defines

"injury") as that phrase is commonly interpreted by the courts. Accordingly, genuine issues of fact exist as to count one of the plaintiff's complaint.

## COUNT TWO

Count two is brought under the Alabama Litigation Accountability Act ("ALAA") found at Ala. Code §§ 12-19-270 through 12-19-276 (1975). Section 12-19-272 provides in pertinent part as follows:

> [I]n any civil action commenced or appealed in any court of record in this state, the court shall award as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorneys' fees and costs against any attorney or party or both who has brought a civil action, or asserted a claim therein, or interposed a defense that a court determines to be without substantial justification, either in whole or part;

This provision does not create a new or separate cause of action, but requires that a motion for the award of attorneys' fees and costs be made in the action in which the allegedly frivolous claim or defense was asserted. Baker v. Williams Bros., 601 So. 2d 110, 112 (Ala. Civ. App. 1992). The plaintiff seeks to recover based upon the defendants' refusal to pay his claim prior to the commencement of any civil action. Such refusal, therefore, cannot form the basis of a claim in the instant lawsuit under the ALAA. The court's independent research has revealed no federal case in which the ALAA has been applied. However, a similar provision

contained in Puerto Rico's rules of civil procedure[3] has long been held to be substantive for Erie purposes. See, Servicios Comerciales Andinow v. Ge Del Caribe, 145 F.3d 463, 478 (1st Cir. 1998). Currently there is no evidence in the record indicating that the defendants' defense to the present action is "without substantial justification." Therefore, even if the ALAA applies to diversity actions in the federal courts in which Alabama law is applied, the present record presents no genuine issue of fact, and the defendants are entitled to a judgment as a matter of law on count two of the plaintiff's complaint.

## COUNT THREE

Count three of the plaintiff's complaint is for bad faith refusal to pay and failure to investigate. The defendants argue that this count is barred by the applicable two-year statute of limitations. Ala Code §6-2-38(1)(1975). A claim for bad faith refusal to pay insurance benefits accrues "for statute of limitations

---

[3] Rule 44.1(d) provides in relevant part:

In the event any party or its lawyer has acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum for attorney's fees which the court decides corresponds to such conduct.

P.R.Laws Ann. tit. 32, app. III R. 44.1(d) (1984 & Supp.1989)(quoted in Dopp v. Pritzker, 38 F.3d 1239, 1252 (1st Cir. 1994).

purposes 'when the party seeking to bring the action knew the facts which would put a reasonable mind on notice of the *possible existence* of [bad faith].'" Alfa Mut. Ins. Co. v. Smith, 540 So. 2d 691, 692-93 (Ala. 1988). The record reveals that the plaintiff was notified on August 8, 1995, that he was being denied coverage under the work-related accident provisions of his policy. The present action was filed August 15, 1997, more than two years following that notification. Therefore, the plaintiff's claim for bad faith refusal to pay insurance benefits is barred by the statute of limitations.

Alternately, the defendants argue that the plaintiff has failed to introduce a genuine issue of fact as to the presence of essential elements to a claim for bad faith. The elements of a claim for bad faith failure to pay insurance benefits have been stated as follows:

"(a) an insurance contract between the parties and a breach thereof by the defendant;

"(b) an intentional refusal to pay the insured's claim;

"(c) the absence of any reasonably legitimate or arguable reason for the refusal (the absence of a debatable reason);

"(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;

> "(e) if intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

Blackburn v. Fidelity and Deposit Co., 667 So. 2d 661, 667 (Ala. 1995) (quoting National Sec. Fire & Casualty Co. v. Bowen, 417 So. 2d 179, 183 (Ala. 1982)). The plaintiff has failed to introduce a genuine issue for trial on several of these essential elements of his claim. The plaintiff has introduced no evidence tending to show that the defendants had no arguable reason for refusing to pay his claim. Nor has he introduced any evidence tending to show that the insurer had actual knowledge of the absence of debatable reason for refusing to pay his claim. (As noted above, the plaintiff has made no submission of any kind in response to the defendants' motion.) As to the plaintiff's claim that the defendants failed to investigate his claim, there is likewise no genuine issue of fact. The plaintiff in his deposition admitted that he had no knowledge as to whether the defendants investigated his claim or not. (Williamson Depo. at 221.) In addition, Dean Piearson, in his affidavit, states that defendant Preferred Administrative Services, Inc. took numerous steps in investigating the plaintiff's claim before determining that coverage did not exist under the policy. For these reasons, the plaintiff has failed to introduce a genuine issue of fact as to essential elements of his bad faith

claims, and the defendants are entitled to a judgment as a matter of law on those claims.

## CONCLUSION

As to counts two and three of the plaintiff's complaint, there exists no genuine issue as to any material fact and defendants are entitled to a judgment as a matter of law on those counts. However, as to count one of the plaintiff's complaint, genuine issues of fact exist. An appropriate order will be entered contemporaneously herewith

DONE this __10th__ day of September 1998.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.